UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **FIRMUS MANAGEMENT AND CONSTRUCTION LLC,** *Plaintiff* | § § § § § § § § § § |
| v. | |
| **THIRD COAST INSURANCE COMPANY,** *Defendant* | |

No. 1:22-CV-0735-DAE

**ORDER**

Before the Court is Third Coast's Motion to Strike and Exclude the Expert Report, Opinions, and Testimony of Michael LoGiudice, Dkt. 23, along with all associated responses and replies. After considering the parties' filings, counsel's arguments at the hearing set on the motion, and the applicable law, the Court denies the motion.

**I.      LEGAL STANDARD**

Federal Rule of Evidence 702 sets the standard the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597-98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and

1

>   (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the unsupported assertions of an expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592-93. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for the expert's testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. Fed. R. Evid. 104(a). The proponent does not have to demonstrate that the

testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276. Pursuant to Rule 403, the Court may also exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

## II.     ANALYSIS

This is a commercial property insurance dispute related to a residential apartment complex in Austin, Texas, which is known as Mueller Flats Apartments. Third Coast issued Policy No. PROP-STR7-031248-20 to Firmus providing limited coverage for property damage and business income loss. Firmus filed an insurance claim under the Policy following February 2021's Winter Storm Uri, which included alleged property damage and lost business income. Third Coast made payments to Firmus under the Policy, but Firmus contends that the amount paid was not the full amount owed under the Policy and, on that basis, asserts claims for breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Dkt. 1-7, at 7-9.

Firmus served Third Coast with expert designations and reports on March 17, 2023, which included the designation and materials of Michael LoGiudice, a forensic accountant based out of West Palm Beach, Florida. Dkt. 19, at 1-2. LoGiudice is designated to opine on "the amount of Plaintiff's business income losses due to the loss event at issue in this lawsuit." *Id.* LoGiudice is identified as a

Certified Public Accountant with an American Institute of Certified Public Accountants (AICPA) certification in Financial Forensics, and a Partner of LoGiudice Forensic Accounting, specializing in standard and litigated business and intangible asset valuations and insurance and damage measurement. *Id.*

In his report, LoGuidice opines that Firmus sustained lost rental income in the amount of $1,010,327 and lost rental value of $529,290. Dkt. 23-1. Third Coast moves to exclude LoGuidice's opinions arguing that his calculations: (1) are not based on the terms and conditions in the Policy; (2) incorporate rental losses caused by non-covered causes (*e.g.*, COVID-19 and elective nonpayment of rent); (3) are based on irrelevant and unreliable market data; (4) miscalculate the relevant "period of restoration" using invoicing for unrelated repairs; and (5) otherwise fail to allocate between covered and non-covered losses. Dkt. 23, at 2.

Firmus asserts that Third Coast's arguments go to the weight and not the reliability of LoGuidice's opinions, and therefore, his opinions should not be excluded. Dkt. 30, at 1. Additionally, Third Coast argues that LoGuidice's opinions are reliable.[1]

### A. Whether LoGuidice's Opinions Are Reliable Because He Failed to Base His Calculations on the Relevant Policy Provisions

First, Third Coast argues that, despite testifying in his deposition that he does not have any opinions in this case regarding coverage under the Policy, his opinion of lost "business income" necessarily implicates Policy coverage. Dkt. 23, at

---

[1] Firmus argues that Third Coast's motion to strike should be denied for failure to confer as required by the Local Rule of the Western District of Texas. Third Coast asserts that Firmus' Response should be stricken as untimely. The undersigned finds that both parties' failures to follow the Rules cancel out and addresses the motion on the merits.

5. Third Coast argues that LoGuidice's lost income damages opinion includes items not covered under the Policy: (1) damaged apartments that were not already leased out; (2) leased apartments that remained tenantable; and (3) damaged untenantable apartments without evidence that the units would have been rented, but for the covered damage. Dkt. 23, at 5.

Third Coast further argues that LoGuidice does not identify a "suspension" of "operations" under the Policy, the affected units, and the length of the suspension. Instead, he identifies a pre-loss period in 2019, where occupancy was high, and compares that to the occupancy in 2021 during the loss period, unrelated to whether the lowered occupancy was related to the storm or other factors, such as Covid.

Lastly, with regard to this argument, Third Coast complains that LoGuidice asserts that market conditions post-freeze would have allowed a 94 percent occupancy rate, despite a prior 84 percent occupancy rate, and the Policy specifically provides that it does not cover lost value attributable to favorable business conditions.

Firmus responds that while a forensic accountant and not a coverage expert, LoGuidice nonetheless measured the business income loss and rental value loss as defined in the Policy. Dkt. 30, at 7. Firmus asserts that LoGuidice assembled data for review and performed calculations as to loss without regard for what the insurance policy actually covers and that this was proper because Firmus notes that insurance coverage is a legal question and not one for the expert to answer. *Id.*

5

Third Coast replies that it is impossible to determine lost "business income" under the Policy without interpreting the Policy. Dkt. 28, at 3. And, Third Coast argues, LoGuidice interpreted the Policy incorrectly, quoting provisions from the Terrorism Coverage schedule when he should have relied on the Business Income Coverage Form of the Policy. *Id.* And, he interpreted the Policy incorrectly again, citing the Policy's provision for Extended Income or Rental Value, which Third Coast asserts is inapplicable in this case, because certain triggering events are required to render it applicable, which failed to occur here. *Id.*

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore County*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Defendants are free to raise issues with the bases of LoGuidice's opinions at trial to inform what weight the jury should place on them. The Rules of Evidence favor admission rather than exclusion. *Young v. Ill. Cent. Gulf R.R. Co.*, 618 F.2d 332, 337 (5th Cir. 1980) ("Trial courts must not lose sight, however, of the liberal nature of the Federal Rules of Evidence. It must be remembered that the federal rules and practice favor the admission of evidence rather than its exclusion if it has any probative value at all."). The undersigned declines to exclude LoGuidice's related testimony based on any purported lack of reliability.

B.  **Whether LoGuidice's Opinions Are Reliable Because of His Choice of Time Period to Assess Occupancy Rates**

Third Coast next complains LoGiudice's methodology is flawed because he uses too large a time period to compare historical occupancy rates at Mueller Flats to occupancy rates in 2021 after Winter Storm Uri. Dkt. 23, at 6. Third Coast asserts that LoGiudice should have used the historical occupancy period just prior to Winter Storm Uri in 2020, showing that occupancy at Mueller Flats was declining prior to the storm, and at a greater rate than the Austin property rental market during 2020. *Id.* Instead, LoGiudice declined to use Mueller Flats occupancy data from 2020 at all in making his calculation, opting instead to use a "lookback period" of occupancy data for Mueller Flats in 2019, when occupancy was significantly higher. *Id.*

LoGuidice excludes 2020 occupancy data based on Covid-19 related government restrictions which he claims caused the approximate 8.88% drop in occupancy at Mueller Flats in 2020. Dkt. 23-1. Third Coast complains that LoGuidice offers no factual support for this opinion, "nor does he explain why the average occupancy in the Austin real estate rental market stayed nearly stagnant throughout 2020 while Muller Flats regressed," and that he failed "to address or rule out any other potential causes for the drop in occupancy at Mueller Flats during 2020 …." Dkt. 23, at 7; Dkt 23-1, at 4.

Third Coast also takes issue with LoGuidice's calculation of "expected occupancy" for the Restoration Period, based on 2019 occupancy data, as compared to the actual occupancy data, to arrive at his business income loss number, which it

7

asserts is inflated. Dkt. 23, at 7; Dkt 23-1, at 11. Third Coast argues that LoGuidice offers no factual support for this opinion, and therefore it is ipse dixit which the Court should exclude.

Firmus responds that LoGuidice used proper methodology in excluding 2020 data because of the impact of Covid-19 shutdowns. Dkt. 30, at 8. It argues that to utilize the occupancy rates and rental values for 2020 in calculating the 2021-2022 losses in this case would provide an inaccurate basis of Mueller Flats' loss. Firmus maintains that LoGiudice performed an overall analysis of occupancy trends before and after the covered cause of loss, which is the AICPA-approved before-and-after method. Firmus maintains this methodology provides evidence to a reasonable degree of certainty that a loss was sustained. Dkt. 30, at 9 n.1. Firmus argues that LoGuidice's analysis is reliable as he uses data from the time when the University of Texas was conducting classes to determine the occupancy rate of 94.62% after Covid-19 shutdowns ended, when the University of Texas was again conducting classes in the fall of 2021. Firmus asserts this percentage is conservative as, prior to remote learning, occupancies were from 98.99% to 92.17%, and this number takes into account vacant units that are vacant for other non-loss-related reasons, otherwise occupancy would be claimed at 100% occupancy.

Firmus also asserts that LoGudice did take into account the impact of Covid-19 in making his damages assessment. For instance, he took into account how much the University of Texas lockdowns affected occupancy rates in 2021, bifurcating semesters relating to whether classes were in person or not. Dkt. 30-1, at 7.

8

Third Coast replies that LoGuidice provides no basis for his opinion that the Covid-19 pandemic caused occupancy rates to decline at Mueller Flats in 2020. Dkt. 28, at 3. And, Third Coast argues, there is no coverage for decline in occupancy due to a pandemic, and LoGuidice has failed to establish that the loss of income was caused by Uri, the covered cause of the loss. *Id.*

Because experts can reach different conclusions based on competing versions of the facts, the Court should not exclude an expert's opinion simply because the Court believes another version of the facts or considers the evidence doubtful or tenuous. *See Pipitone,* 288 F.3d at 249. In this case the parties dispute whether exclusion of the 2020 occupancy data was proper in LoGuidice's formulation of his opinion. The factual basis of LoGiudice's opinion relates to the weight that should be given to his testimony, not to its admissibility. *See Primrose Oper. Co. v. National Am. Ins.*, 382 F.3d 546, 562 (5th Cir. 2004) (questions about bases and sources of expert's opinion generally affect weight to be assigned to that opinion rather than its admissibility and should be left to trier of fact's consideration). The undersigned finds that LoGuidice's opinions on this issue should not be excluded as unreliable. *See Daubert*, 509 U.S. at 596 (holding "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

### C. Testimony Regarding the Restoration Period

Lastly, Third Coast argues that LoGuidice's opinions are unreliable because he miscalculates "the Period of Restoration." Dkt. 23, at 7. The "Period of

9

Restoration" is the hypothetical repair period, beginning on the date of loss and ending on the date when the property "should be repaired, rebuilt or replaced with reasonable speed and similar quality." Dkt. 23-3, at 36.

Third Coast maintains that LoGiudice calculated the Period of Restoration here to run from February 17, 2021, to the end of February 2022. Third Coast argues this is a full six months longer than the actual "Period of Restoration." Third Coast asserts LoGiudice's method to arrive this period is in error because: (1) he wrongly concludes that repairs to the Winter Storm Uri damage were ongoing through November 2021; and (2) he misinterprets the Policy by citing to a provision which is not applicable here. Dkt. 23, at 7.

Third Coast asserts that in his deposition testimony, LoGiudice was unsure what repairs to what parts of the Property were supposedly ongoing in November 2021, because of invoices for purchases of appliances during that time, Dkt. 23-2, at 174-75, but that the repairs to the damage caused by Winter Storm Uri were complete by—at the latest—September 1, 2021, which was the end of the Period of Restoration, Dkt. 23, at 7.

Additionally, Third Coast asserts LoGiudice wrongly extended the Period of Restoration by 90 days by misinterpreting the Extended Business Income provision of the Policy, Dkt. 23-1, at 9, which only applies when a business sustains a sort of loss that causes the "operations" of that business to be "suspended" in whole or in part, Dkt. 23-3, at 32-33. Third Coast argues this did not happen here as Winter Storm Uri did not destroy Mueller Flats and the "operations" of the apartments

10

were never "suspended"; and even if they were, LoGuidice's opinion did not take into account which units were "suspended" and when they were released.

Firmus responds that LoGiudice determined the Period of Restoration to be from February 17, 2021, to November 2021, with an extended 90-day period to February 2022 per the Policy. Dkt. 30-1. Firmus points out that Third Coast's assertion that LoGiudice's Period of Restoration runs until February 2022 is in error, because he determined it ends in in November 2021 while the extended period February 2022. Thus, the parties dispute when the Period of Restoration ends pursuant to the terms of the Policy.

Firmus also asserts that the Policy has a $5,621,561 limit of insurance for "Business Income/Rental Value" without a stated number of days period-of-time limit. Once the Period of Restoration is over, the policy also contains a 90-day extended Business Income/Rental Value provision.[2] The parties dispute whether this provision is applicable here.

---

[2] The Policy states in relevant part:

> 2. Extended Business Income or Rental Value: If the necessary "Suspension" of the Named Insured's "Operations" produces a Business Income or Rental Value loss payable under this Policy, the insurance provided by this coverage form is extended to apply to such loss of Business Income or Rental Value incurred by the Named Insured during the period that:
>
> a. Begins on the date property (except "Finished Stock") is actually repaired, rebuilt or replaced and "Operations" are resumed or tenantability is restored; and
>
> b. Ends on the earlier of:
>
> (1) The date the Named Insured could restore "Operations", with reasonable speed, to the level which would generate the Business Income amount or

11

Firmus asserts that if it is determined that the carrier's interpretation of the suspension of business condition was not met, LoGiudice's calculation lists the loss for each and every month, and it will be simple to adjust the loss accordingly. Dkt. 30, at 12. It argues that policy interpretations, factual disagreements, and legal coverage analysis do not render LoGiudice's calculations unreliable in this case.

Third Coasts asks the undersigned, in the context of a motion to exclude, to determine the applicability of certain Policy provisions. This type of analysis is more appropriate in the context of a motion for summary judgment or other pretrial motions—not a *Daubert* motion. Without deciding the applicability of certain portions of the Policy, the undersigned finds that LoGuidice's testimony regarding damages is admissible. While acknowledging that LoGuidice might have applied certain Policy provisions that are inapplicable, or determined that certain repairs were included in the Period of Restoration when they should not have been, these conclusions do not infect the methodology with known error. And to the extent they may be faulty, the issue goes to the weight of the evidence, not its admissibility, and should be addressed on cross-examination, not by a *Daubert* motion. *See Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:20-CV-00050-JRG-RSP, 2020 WL 3513523, at *2 (E.D. Tex. June 29, 2020). "[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be

---

> Rental Value amount that would have existed if no direct physical loss or damage had occurred; or

(2) Ninety (90) consecutive days after the date determined in 2. a. above.

Dkt. 32-3 at 32-33.

assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Primrose*, 382 F.3d at 562. While there are obvious flaws in some of the bases of LoGuidice's opinions, it does not render them inadmissible.

It is **THEREFORE ORDERED** that is Third Coast's Motion to Strike and Exclude the Expert Report, Opinions, and Testimony of Michael LoGiudice, Dkt. 23, is **DENIED**. The referral to the undersigned is **CANCELED**.

SIGNED July 24, 2023.

                                               DUSTIN M. HOWELL
                                               UNITED STATES MAGISTRATE JUDGE